**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000652
28-OCT-2024
08:03 AM
Dkt. 87 SO**

NO. CAAP-20-0000652

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


FRANCISCO R. YOUNG, Claimant-Appellant-Appellant, v.
EMPLOYMENT SECURITY APPEALS REFEREE OFFICE,
Agency-Appellee-Appellee;
MAUI COUNTY PARKS AND RECREATION,
Employer-Appellee-Appellee.


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CCV-20-0000012)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and McCullen, JJ.)

Claimant-Appellant-Appellant Francisco R. **Young**

appeals from the Circuit Court of the Second Circuit's:[1]

(1) August 12, 2020 findings of fact, conclusions of law, and

decision and order denying his appeal; (2) September 22, 2020

Order denying his motion for reconsideration; and

(3) September 28, 2020 final judgment in favor of Agency-

---

[1] The Honorable Peter T. Cahill presided.

Appellee-Appellee State of Hawaiʻi Department of Labor and Industrial Relations Employment Security Appeals Referees' Office (**ESARO**) and Employer-Appellee-Appellee **County** of Maui Department of Parks and Recreation.

Young worked for the County as a carpenter-cabinet maker from June 2017. Young was subject to a December 23, 2008 **Supplemental Agreement** between the County and his union.

The Supplemental Agreement governed alcohol and substance testing, which was "intended to help keep the workplace free from the hazards resulting from the use of alcohol and controlled substances." The definition of controlled substances included amphetamines. Regarding controlled substances, the Supplemental Agreement provided that the "[e]mployee shall not . . . [r]efuse to submit to a required controlled substance test." Under the Supplemental Agreement, an employee who refuses to submit to a controlled substance test "shall be discharged unless the Employee agrees to sign Exhibit 63A.09c., Controlled Substance **Last Chance Agreement,** whereby the Employee agrees to resign from employment in the event of a positive controlled substance test or second refusal to be tested within three (3) years of the first refusal to test." (Emphasis added.)

Young's work hours were from 7:00 a.m. to 3:30 p.m., and at about 7:15 a.m. on November 15, 2018, Young's supervisor informed him "that he was selected for a random drug test" at 8:00 a.m. Young then informed his supervisor that he needed to take his daughter to the doctor. The supervisor said Young could take the test before picking up his daughter, but Young chose to leave without submitting to the test.

The next day, the County informed Young that he would be discharged unless he signed the Last Chance Agreement. Young chose to sign the Last Chance Agreement.

About six months later, in May 2019, Young was again selected for a random drug test. Young's test came back as positive for amphetamines and methamphetamines. Young requested testing of the split sample, which also came back positive for amphetamines and methamphetamines. Following the results of the split sample, the County informed Young it accepted his resignation pursuant to the Last Chance Agreement.

According to Young's testimony, his union filed a step 1 grievance and a step 2 grievance, which were denied. Young further testified the union did not want to go to arbitration as "they claimed that they [sic] didn't have any merit."

Young also applied for unemployment insurance benefits. According to a summary of the fact-finding interview, Young informed the Unemployment Insurance Division that he "tested positive for drugs" and he was "forced to resign as to the terms and conditions of the last chance agreement[.]"

Young's request for unemployment insurance benefits was denied because he "quit in lieu of termination effective 6/20/19 as per violating the company's last chance agreement put in place on 11/16/[1]8." The Unemployment Insurance Division concluded Young was "discharged for misconduct connected with work."

Young appealed to the ESARO, which affirmed the Unemployment Insurance Division's decision. Young then appealed to the circuit court, which affirmed the ESARO's decision. Young filed a timely notice of appeal to this court.

On appeal, Young contends the circuit court erred in: (1) "failing to examine procedural challenges raised"; (2) "concluding [he] was properly discharged for misconduct"; (3) "deferring to a non-existent finding"; and (4) "affirming the ESARO's improper burden shifting." (Formatting altered.)

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the issues raised and the arguments advanced, we resolve the points of error as discussed below, and affirm.

**(1)**  Young's first, third, and fourth points of error are related to his positive drug test results.  In his first point of error, Young argues he was denied an opportunity to discuss the test result with the medical review officer and provide information on the medications he was taking.  In his third point of error, Young argues the circuit court erred in affirming a non-existent finding that the medical review officer properly interviewed him after his positive drug test result.  And in his fourth point of error, Young argues the ESARO improperly shifted the burden by finding he "provided no legitimate medical explanation for his positive test results[.]"

In these arguments, Young appears to challenge his resignation.  But for signing the Last Chance Agreement, Young would have been terminated after his refusal to test.  And by signing the Last Chance Agreement, Young agreed "that a resignation from employment deprives the Employee of the right to grieve . . . or challenge the resignation."

As Young himself testified, the union nevertheless unsuccessfully pursued step 1 and step 2 grievances.  Young also testified that the union stopped short of going to arbitration based on lack of merit.

In sum, any challenge to his resignation was addressed by the Last Chance Agreement and should have been raised in the union grievances. Thus, we need not further address these arguments.

**(2)** Next, Young's second point of error contends the circuit court erred in "concluding [he] was properly discharged for misconduct." (Formatting altered.) He argues that the hearing officer improperly relied on Hawaiʻi Revised Statutes (**HRS**) § 383-30(2) and "entered its decision without addressing paragraphs 9 and 10" of the Last Chance Agreement. Young further argues that the County breached the no-fault and confidentiality clauses of paragraphs 9 and 10 when it presented reasons for his discharge.

The County points out that Young raised this issue for the first time on appeal and this court should not consider this issue. Even if we were to consider this issue, Young fails to show error.

Under HRS § 383-30(2) (2015), an individual is disqualified from receiving unemployment insurance benefits if the discharge or suspension was based on misconduct. See Hawaiʻi Administrative Rules § 12-5-51(e)(7) (providing that misconduct includes "Employee's unauthorized use of intoxicants on the job"). Paragraph 9 of the Last Chance Agreement provided that the "Employee's resignation from employment . . . shall be

6

reported in the Employee's personnel file as a resignation without fault" and Paragraph 10 provided that the Last Chance Agreement "shall be confidential[.]"

Here, the Unemployment Insurance Division concluded Young was discharged for misconduct based on his positive drug test and denied his request for benefits. This decision was supported by Young's own statements. On October 2, 2019, shortly after he filed a claim for benefits, Young provided a statement to the Unemployment Insurance Division that he "tested positive for drugs" and he was "forced to resign as to the terms and conditions of the last chance agreement that was in place from November 2018[.]"

The record further shows the County made its statement two days later, on October 4, 2019, and provided the information the Unemployment Insurance Division requested. In other words, the record shows it was Young who placed his positive drug test and the Last Chance Agreement before the Unemployment Insurance Division, disregarding paragraphs 9 and 10 of the Last Chance Agreement.

In sum, Young fails to show the ESARO's decision was in violation of constitutional or statutory provisions, in excess of its jurisdiction, made upon unlawful procedure,

clearly erroneous, arbitrary or capricious, or an abuse of discretion.

Based on the foregoing, we affirm the circuit court's September 28, 2020 final judgment.

DATED:  Honolulu, Hawaiʻi, October 28, 2024.

On the briefs:

Ryan D. Hurley,
Bianca K. Isaki,
for Claimant-Appellant-
Appellant.

Amy Chan,
Deputy Attorney General,
for Agency-Appellee-Appellee,
Director of Labor and
Industrial Relations.

Caleb P. Rowe,
Richelle K. Kawasaki,
Deputies Corporation Counsel,
for Employer-Appellee-
Appellee,
County of Maui, Department of
Parks and Recreation.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge